**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:07-CR-0500** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **PAUL SHENANDOAH** | : | |

-------------------------------------------------------------------------------

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:08-CR-0196** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **BRIAN DENNIS DOUGLAS** | : | |

## MEMORANDUM

Presently before the court are motions to dismiss the indictments in two

separate criminal actions, namely, United States v. Paul Shenandoah and United

States v. Brian Dennis Douglas. (See No. 07-500, Doc. 22; No. 08-196, Doc. 20.) The

motions challenge the constitutionality of the Sex Offender Registration and

Notification Act ("SORNA") both on its face and as applied. The motions have been

fully briefed and are ripe for disposition.

For purposes of judicial economy, the court will address both motions in a

single memorandum. For the reasons that follow, the motions will be denied.

## I.    Factual Background

A brief discussion of the factual and procedural history underlying the case

against each defendant follows. Because defendant Paul Shenandoah was indicted

first, the court turns initially to a discussion of the case against him.

A.   **Paul Shenandoah**

On December 19, 2007, defendant Paul Shenandoah ("Shenandoah") was indicted by a grand jury.  The indictment charges Shenandoah with two counts of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. § 14072(i)(1) and two counts of knowingly and willfully providing false information to law enforcement officials regarding his federal sex offender registration offenses in violation of 18 U.S.C. §§ 1001 and 1512(b)(3).  (See No. 07-500, Doc. 1 at 3-6.)  The government alleges, *inter alia*, that Shenandoah was previously convicted in the State of New York of raping and sexually assaulting a minor.  As a component of his previous conviction and sentence, Shenandoah was required to comply with the sex offender registration requirements of the State of New York and all other jurisdictions in which he lived and worked.  Despite his knowledge of these requirements, Shenandoah allegedly failed to register as a sex offender, verify his current address, or notify officials of changes in his place of residence and employment.  (See id. at 1-2.)  On May 13, 2008, Shenandoah entered a plea of not guilty to each count in the indictment.  (No. 07-500, Doc. 11.)

On June 25, 2008, Shenandoah filed a motion to dismiss the indictment. (No. 07-500, Doc. 22.)  The motion alleges that SORNA violates the nondelegation doctrine, the Administrative Procedures Act, the Ex Post Facto Clause, the Due Process Clause, the Commerce Clause, the Tenth Amendment, and the right to travel.  (See No. 07-500, Doc. 23.)

### B.    Brian Dennis Douglas

On May 14, 2008, defendant Brian Dennis Douglas ("Douglas") was indicted by a grand jury.  The indictment charges Douglas with two counts of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. § 14072(i)(1).  (See No. 08-196, Doc. 1 at 3-4.)  The government alleges, *inter alia*, that Douglas was previously convicted of raping and sexually assaulting a minor.  As a component of his previous conviction and sentence, Douglas was required to comply with the sex offender registration requirements of the Commonwealth of Pennsylvania and all other jurisdictions in which he lived and worked.  Despite his knowledge of these requirements, Douglas allegedly failed to register as a sex offender, verify his current address, or notify officials of changes in his place of residence and employment.  (See id. at 1-2.)  On June 3, 2008, Douglas entered a plea of not guilty to each count in the indictment.  (See No. 08-196, Doc. 10.)

On July 2, 2008, Douglas filed a motion to dismiss the indictment.  (No. 08-196, Doc. 20.)  Like Shenandoah's motion, Douglas's motion asserts that SORNA is unconstitutional both on its face and as applied.  The motion is premised on all grounds raised by Shenandoah, with the exception of the right to travel.  (See No. 08-196, Doc. 21); see also supra Part I.A.

## II.    Standard of Review

Defendants move to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3), which permits a defendant to assert any "defect in the indictment" prior to trial.  The United States Court of Appeals for the Third Circuit

has summarized the standard for evaluating the sufficiency of an indictment as follows:

> We deem an indictment sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." Moreover, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."

United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (citations omitted).

Dismissal under Rule 12(b)(3) "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000). Accordingly, the court must assume that the allegations in the indictment are true. United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990). The court will review the indictment "using a common sense construction," United States v. Hodge, 211 F.3d 74, 76 (3d Cir. 2000), "examine the [statutes at issue] as applied to the facts as alleged in the indictment, and determine whether the defendant's conduct, as charged, 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute[s].' " United States v. Delle Donna, No. 07-784, 2008 WL 1961485, at *5 (D.N.J. Mar. 14, 2008) (quoting United States v. Wecht, No. 06-0026, 2007 WL 3125096, *5 (W.D. Pa. Oct. 24, 2007)); see also United States v. Bryant, No. 07-0267, 2008 WL 2315720, at *1-2 (D.N.J. June 5, 2008).

III.   **Discussion**

Congress enacted the Sex Offender Registration and Notification Act

("SORNA") on July 27, 2006, as a component of the Adam Walsh Child Protection

and Safety Act of 2006.  SORNA creates a national sex offender registration system

that was designed to "help prevent sex offenders from evading detection by moving

from one state to the next."  See Adam Walsh Child Protection and Safety Act of

2006, Pub. L. No. 109-248, 2006 U.S.C.C.A.N. S35-S36; see also United States v.

Gillette, 553 F. Supp. 2d 524, ___ (D.V.I. 2008).  This national system requires sex

offenders to maintain a current registration in each jurisdiction in which they live,

work, or attend school.  See 42 U.S.C. § 16913(a).[1]  In addition to mandating

registration, SORNA criminalizes the failure to register.  Specifically, SORNA

makes it a crime for any sex offender who "is required to register" and who "travels

---

[1] SORNA's registration requirement provides, in pertinent part:

(a) In general - A sex offender shall register, and keep the registration
current, in each jurisdiction where the offender resides, where the offender is
an employee, and where the offender is a student. . . .
(b) Initial registration - The sex offender shall initially register--
(1) before completing a sentence of imprisonment with respect to the offense
giving rise to the registration requirement . . .
(c) Keeping the registration current - A sex offender shall, not later than 3
business days after each change of name, residence, employment, or student
status, appear in person in at least 1 jurisdiction involved pursuant to
subsection (a) of this section and inform that jurisdiction of all changes in the
information required for that offender in the sex offender registry.  That
jurisdiction shall immediately provide that information to all other
jurisdictions in which the offender is required to register.

42 U.S.C. § 16913.

in interstate . . . commerce" to "knowingly fail[] to register or update a registration." 18 U.S.C. § 2250(a).[2]

When SORNA was enacted, Congress delegated the authority to promulgate regulations regarding its breadth to the United States Attorney General.  See 42 U.S.C. § 16913(d).[3]  On February 28, 2007, the Attorney General issued an interim rule regarding SORNA.  The rule clarified that SORNA's requirements are applicable "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to [SORNA's] enactment."  See 28 C.F.R. § 72.3; see also United States v. Kapp, 487 F. Supp. 2d 536, 541 (M.D. Pa. 2007) (stating that

---

[2]  SORNA's criminal provision provides, in pertinent part, that anyone who:

(1) is required to register under [SORNA];
(2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law . . . ; or
(B) travels in interstate or foreign commerce . . .; and
(3) knowingly fails to register or update a registration as required by [SORNA];
shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

[3]  SORNA's delegation provision provides, in pertinent part:

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section - The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d).

the interim rule made it "indisputably clear that SORNA applies to sex offenders . . . regardless of when they were convicted").

SORNA also requires states to conform their sex offender registries to federal requirements by 2009 or risk losing a component of their federal funding. See 42 U.S.C. §§ 16924(a), 16925(a). The states relevant to the instant case, namely, Pennsylvania, New York, and Florida, have not yet complied fully with these requirements. See United States v. Fuller, No. 07-462, 2008 WL 2437869, at *3 (N.D.N.Y. June 13, 2008) (holding the New York has not yet implemented SORNA); see also S.B. 1130, 2007-2008 Gen. Assemb., Reg. Sess. (Pa. 2008) (pending SORNA implementation bill in Pennsylvania); S.B. 1604, 110th Cong., Reg. Sess. (Fla. 2008) (pending SORNA implementation bill in Florida).

Defendants allege that SORNA violates the Ex Post Facto, Commerce, and Due Process Clauses, as well as the Tenth Amendment and the right to travel. In addition, defendants assert that SORNA's enactment violates the nondelegation doctrine and the Administrative Procedures Act. Defendants also posit an as-applied challenge to SORNA based upon the Attorney General's failure to make SORNA expressly applicable to defendants. A discussion of each of the alleged pitfalls of SORNA follows.

## A.   Ex Post Facto Clause

The Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."

7

Weaver v. Graham, 450 U.S. 24, 28 (1981) (citations and quotations omitted); see also

U.S. Const. art 1, § 9.  Thus, a law is ex post facto if it:  (1) is penal,[4] (2) has

retroactive effect, and (3) is more onerous than the law in effect on the date of the

offense.  See Collins v. Youngblood, 497 U.S. 37, 41 (1990); Weaver, 450 U.S. at 29;

United States v. Johns, 742 F. Supp. 196, 218 (E.D. Pa. 1990).  A law has retroactive

effect if it "changes the legal consequences of acts completed before its effective

date."  Carmell v. Texas, 529 U.S. 513, 520 (2000); Miller v. Florida, 482 U.S. 423, 430

(1987).

     To violate SORNA's criminal provision, the defendant must:  (1) be required

to register in some jurisdiction, (2) knowingly fail to register or update a prior

registration, and (3) travel in interstate commerce.  See United States v. Utesch, No.

07-105, 2008 WL 656066, at *5-7 (E.D. Tenn. Mar. 6, 2008).   In other words, SORNA

does not impose an additional punishment for a predicate sex offense.  Instead,

---

[4] Application of the Supreme Court's construction of Alaska's sex offender registration scheme in Smith v. Doe, 538 U.S. 84 (2003) to SORNA is problematic in that previous applications have resulted in a split of authority.  Numerous courts have held that SORNA does not violate the Ex Post Facto Clause because it is a "civil nonpunitive regime" rather than a penal statute.  See, e.g., Levine v. Pa. State Police, No. 07-1453, 2007 WL 3033951, at *4 (M.D. Pa. Oct. 16, 2007); United States v. LeTourneau, 534 F. Supp. 2d 718, 720-22 (S.D. Tex. 2008); United States v. Gould, 526 F. Supp. 538, 548-49 (D. Md. 2007); United States v. Carr, No. 07-0073, 2007 WL 3256600, at *2-3 (N.D. Ind. Nov. 2, 2007); United States v. Mason, 510 F. Supp. 2d 923, 929-30 (M.D. Fla. 2007).  Other courts have disagreed, finding that the criminal provision of 18 U.S.C. § 2250 distinguishes SORNA from the registration scheme considered by the Smith court and makes SORNA punitive.  See, e.g., United States v. Kent, No. 07-0226, 2007 WL 2746773, at *1-2 (S.D. Ala. Sept. 20, 2007); Gillette, 553 F. Supp. 2d at ___.  Because the court finds that SORNA has not been retroactively applied to defendants, see infra pg. 9-11, the court need not resolve this split of authority.

SORNA "works prospectively, creating a new punishment for a new offense, i.e.,
failing to register as a sex offender under SORNA after July 27, 2006." United
States v. Fuller, No. 07-462, Doc. 24 at 7-8 (N.D.N.Y. Mar. 27, 2008); see also United
States v. LeTourneau, 534 F. Supp. 2d 718, 720-22 (S.D. Tex. 2008) ("SORNA does
not punish a defendant for the sexual offense committed prior to the enactment of
SORNA, but rather traveling in interstate commerce and failing to register after
SORNA became effective."); United States v. Gould, 526 F. Supp. 538, 548-49 (D.
Md. 2007) ("[O]nly upon an offender's failure to register under SORNA, a new
offense, do the enhanced penalties apply."); cf. Smith v. Doe, 538 U.S. 84, 101-02
(2003) ("A sex offender who fails to comply with the reporting requirement may be
subjected to a criminal prosecution for that failure, but any prosecution is a
proceeding separate from the individual's original offense.").  As applied to a
defendant who engaged in interstate travel and failed to register, SORNA does not
have retroactive effect and does not violate the Ex Post Facto Clause.  United States
v. Kent, No. 07-0226, 2007 WL 2746773, at *1-2 (S.D. Ala. Sept. 20, 2007) ("[I]n order
to avoid the prohibition of retroactive punishment the defendant must travel in
interstate commerce and fail to register after 18 U.S.C. § 2250 became effective.");
see also Fuller, 2008 WL 2437869, at *3; United States v. David, No. 08-11, 2008 WL
2045827, at *8 (W.D.N.C. Apr. 18, 2008); United States v. Villagomez, No. 08-0019,
2008 WL 918639, at *2-3  (W.D. Okla. Apr. 2, 2008); Utesch, 2008 WL 656066, at *5-7;
United States v. Samuels, 543 F. Supp. 2d 669, 676-77 (E.D. Ky. 2008); United States
v. LeTourneau, 534 F. Supp. 2d 718, 720-22 (S.D. Tex. 2008); United States v.

9

Cardenas, No. 07-80108, 2007 WL 4245913, at *10-11 (S.D. Fla. Nov. 29, 2007); United

States v. Carr, No. 07-0073, 2007 WL 3256600, at *2-3 (N.D. Ind. Nov. 2, 2007); United

States v. Ambert, No. 07-0053, 2007 WL 2949476, at *5 (N.D. Fla. Oct. 10, 2007);

United States v. Gonzales, No. 07-0027, 2007 WL 2298004, at *10 (N.D. Fla. Aug. 9,

2007); United States v. Muzio, No. 07-0179, 2007 WL 1629836, at *3-4 (E.D. Mo.

June 4, 2007); United States v. Mason, 510 F. Supp. 2d 923, 929-30 (M.D. Fla. 2007).

In the instant case, the indictments allege that defendants Shenandoah and

Douglas traveled in interstate commerce and failed to register after August 2007

and February 2008, respectively.  (See No. 07-500, Doc. 1 at 3; No. 08-196, Doc. 1 at

3.)  In short, the indictment alleges that defendants' criminal conduct occurred well

after SORNA's effective date and after promulgation of regulations clarifying

SORNA's applicability to previously convicted sex offenders.  See Villagomez, 2008

WL 918639, at *3 (citing 42 U.S.C. § 16913(d)).  Accordingly, applying SORNA's

criminal provisions to defendants' alleged conduct does not implicate the Ex Post

Facto Clause.  The court will deny defendants' motions to dismiss to the extent they are premised on the Ex Post Facto Clause.[5]

## B.   Commerce Clause

Defendants argue that Congress exceeded its power under the Commerce Clause in enacting SORNA's registration and criminal provisions.  (See No. 07-500,

---

[5] Numerous courts have held that SORNA may be ex post facto as applied to sex offenders who traveled in interstate commerce *after* SORNA's enactment but *before* the Attorney General's issuance of the implementing regulations.  This period has been denominated the "gap period," and the dispute regarding SORNA's constitutionality as applied to offenders in the gap period remains largely unresolved.  See, e.g., United States v. Natividad-Garcia, No. 08-0025, 2008 WL 2353357, at *3-5 (W.D. Tex. June 4, 2008) (finding SORNA ex post facto when applied during the gap period); Gillette, 553 F. Supp. 2d at ___ (same); United States v. Aldrich, No. 07-158, 2008 WL 427483, at *4-5 (D. Neb. Feb. 14, 2008) (same); United States v. Nugent, No. 07-5056, 2008 WL 413273, at *3-7 (W.D. Mo. Feb. 13, 2008) (same); United States v. Kent, No. 07-0226, 2008 WL 360624, at *1-10 (S.D. Ala. Feb. 8, 2008) (same); United States v. Howell, No. 07-2013, 2008 WL 313200, at *9-12 (N.D. Iowa Feb. 1, 2008) (same); United States v. Davis, No. 07-60003, 2008 WL 510599, at *1-2 (W.D. La. Jan. 22, 2008) (same); United States v. Terwilliger, No. 07-1254, 2008 WL 50075, at *1-4 (S.D. Cal. Jan. 3, 2008) (same); United States v. Bonner, No. 07-0264, 2007 WL 4372887, at *1-3 (S.D. Ala. Dec. 11, 2007) (same); United States v. Mantia, No. 07-60041, 2007 WL 4730120, at *3-6 (W.D. La. Dec. 10, 2007) (same).  But see, e.g., United States v. Zuniga, No. 07-3156, 2008 WL 2184118, at *8-14 (D. Neb. May 23, 2008) (finding no ex post facto violation even when SORNA is applied during the gap period); United States v. Glenn, No. 08-50018, 2008 WL 2065919, at *1-2 (W.D. Ark. May 13, 2008) (same); United States v. Ditomasso, 552 F. Supp. 2d 233, ___ (D.R.I. 2008) (same); United States v. Akers, No. 07-0086, 2008 WL 914493, at *5-6 (N.D. Ind. Apr. 3, 2008) (same); United States v. Cardenas, No. 07-80108, 2008 WL 896206, at *2-3 (S.D. Fla. Mar. 31, 2008) (same); United States v. Phasung Lu Baccam, No. 07-30008, 2008 WL 110867, at *1-2  (W.D. Ark. Jan. 8, 2008) (same); United States v. Elliott, No. 07-14059, 2007 WL 4365599, at *4-7 (S.D. Fla. Dec. 13, 2007) (same); United States v. Pitts, No. 07-0157, 2007 WL 3353423, at *5-6 (M.D. La. Nov. 7, 2007) (same); United States v. Beasley, No. 07-115, 2007 WL 3489999, at *2-8 (N.D. Ga. Oct. 10, 2007) (same); United States v. Adkins, No. 07-0059, 2007 WL 4335457, at *2-5 (N.D. Ind. Dec. 7, 2007) (same).  The instant indictments do not allege that defendants traveled and/or failed to register during the "gap period" and, hence, the court need not address this issue.

Doc. 23 at 8-25.)  The Commerce Clause permits Congress to "regulate Commerce with foreign Nations, and among the several States."  U.S. CONST. art. I, § 8, cl. 3. The Commerce Clause empowers Congress to regulate the following three categories of activities:  (1) "the use of the channels of interstate commerce," (2) the use of "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "those activities having a substantial relation to interstate commerce."  United States v. Lopez, 514 U.S. 549, 558-59 (1995); see also Gonzales v. Raich, 545 U.S. 1, 16-17 (2005); Levine, 2007 WL 3033951, at *4.

In Levine v. Pennsylvania State Police, No. 07-1453, 2007 WL 3033951 (M.D. Pa. Oct. 16, 2007), this court previously held that SORNA did not violate the Commerce Clause.  Id. at *4.  The court summarily stated:  "SORNA simply encourages (by conditioning the receipt of federal funds), rather than requires, states to enforce sex offender registration programs.  Furthermore, criminal sanctions are only imposed when a sex offender travels in interstate commerce without registering."  Id.  We concluded that the provisions of SORNA that impose requirements upon the states are insulated by the spending power.[6]

Consistent with the overwhelming majority of district courts that have addressed the issue, we now also conclude that SORNA's remaining provisions withstand constitutional challenge under the second prong of the Lopez test

---

[6] See infra Part III.A.4; see also Ditomasso, 552 F. Supp. 2d at ___.

because they regulate persons in interstate commerce.  See Lopez, 514 U.S. at 558-

59; Zuniga, No. 07-3156, 2008 WL 2184118, at *17-19 (D. Neb. May 23, 2008); United

States v. Cochran, No. 08-0018, 2008 WL 2185427, at *2 (E.D. Okla. May 23, 2008);

United States v. David, No. 08-11, 2008 WL 2045830, at *8-9 (W.D.N.C. May 12, 2008);

United States v. Ditomasso, 552 F. Supp. 2d 233, ___ (D.R.I. 2008); United States v.

Mason, No. 07-0052, 2008 WL 1882255, at *2-3 (M.D. Fla. Apr. 24, 2008); Mason, 510

F. Supp. 2d at 931-32; United States v. Craft, No. 07-3168, 2008 WL 1882904, at *8-11,

19-21 (D. Neb. Apr. 23, 2008); Fuller, No. 07-462, Doc. 24 at 8-10; United States v.

Howell, No. 07-2013, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008); United States v.

Dixon, No. 07-0072, 2007 WL 4553720, at *5 (N.D. Ind. Dec. 19, 2007); United States

v. Elliott, No. 07-14059, 2007 WL 4365599, at *2-3 (S.D. Fla. Dec. 13, 2007); Cardenas,

2007 WL 4245913, at *12; United States v. Pitts, No. 07-0157, 2007 WL 3353423, at *4-

5 (M.D. La. Nov. 7, 2007); United States v. Beasley, No. 07-115, 2007 WL 3489999, at

*9 (N.D. Ga. Oct. 10, 2007); Gonzales, 2007 WL 2298004, at *9; Muzio, 2007 WL

1629836, at *4; United States v. Hinen, 487 F. Supp. 2d 747, 757-58 (W.D. Va. 2007);

Templeton, 2007 WL 445481, at *4.  SORNA's criminal provision expressly limits

SORNA prosecutions to those individuals who have traveled in interstate

commerce.  The court finds that such an express limitation evidences that Congress

was acutely aware of the breadth of its power under the Commerce Clause when it

enacted SORNA.  See David, 2008 WL 2045830, at *8-9 (discussing Congress's

"unmistakable awareness" of the limits of its power under the Commerce Clause);

Mason, 510 F. Supp. 2d at 931-32 (finding that SORNA satisfied the second prong

because it contained "a jurisdictional nexus"); <u>Howell</u>, 2008 WL 313200, at *8 ("It is clear that Congress was aware of the limits of its power in its passage of SORNA because it specifically included the jurisdictional element of interstate travel."); <u>United States v. Adkins</u>, No. 07-0059, 2007 WL 4335457, at *6-7 (N.D. Ind. Dec. 7, 2007) ("Congress was aware of the limits of its power, however, and included the jurisdictional element of interstate travel."); <u>see also</u> <u>Pitts</u>, 2007 WL 3353423, at *5-6; <u>Muzio</u>, 2007 WL 1629836, at *4.  Because federal prosecution under § 2250 does not reach the purely intrastate movement of sex offenders who fail to comply with registration requirements, the court finds that SORNA does not contravene the Commerce Clause.  <u>Zuniga</u>, 2008 WL 2184118, at *17-19; <u>Craft</u>, 2008 WL 1882904, at *21; <u>Hinen</u>, 487 F. Supp. 2d at 757-58.

Our holding is bolstered by the Congressional intent underlying SORNA, i.e., to protect the public safety by creating a mechanism for tracking sex offenders as they move from state to state.  Congress's authority "to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained and is no longer open to question."  <u>See</u> <u>Caminetti v. United States</u>, 242 U.S. 470, 491 (1917) (cited with approval in <u>Lopez</u>, 514 U.S. at 558).  As the Supreme Court has stated:

> Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin.  In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce.

Brooks v. United States, 267 U.S. 432, 436-37 (1925).  The threat posed by sex offenders traveling in interstate commerce is precisely the type of peril that Congress may address utilizing the Commerce Clause.  See David, 2008 WL 2045830, at *8-9 ("There can be no question that the interstate tracking of convicted sex offenders as they migrate around the country is a matter well within the scope of Congress's power.").  Accordingly, the court finds that Congress may regulate these individuals regardless of the impetus for their movement in interstate commerce.  Mason, 510 F. Supp. 2d at 931-32 (citing Lopez, 514 U.S. at 558).  In other words, Congress's ability to regulate "persons in interstate commerce" is not dependant upon the intent of those persons to engage in criminal activity.  Ditomasso, 552 F. Supp. 2d at ___ (citing Lopez, 514 U.S. at 558); Mason, 510 F. Supp. 2d at 931-32.  Accordingly, SORNA falls within Congress's inherent authority

to safeguard interstate commerce.  The court will deny defendants' motions to the

extent they are premised on Commerce Clause challenges to SORNA.[7]

---

[7] At least three district courts have held that SORNA's registration provision - 42 U.S.C. § 16913 – is not authorized by the Commerce Clause.  See United States v. Waybright, ___ F. Supp. 2d ___, 2008 WL 2380946, at *1, 5-11 (D. Mont. June 11, 2008); United States v. Powers, 544 F. Supp. 2d 1331, 1333-36 (M.D. Fla. 2008); United States v. Thomas, 524 F. Supp. 2d 912, 917-22 (N.D. Iowa Feb. 13, 2008). These decisions espouse a separate analysis of SORNA's registration and penalty provisions, and the court rejects this approach.  Both provisions "are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty."  See Fuller, No. 07-462, Doc. 24 at 10.  Considering SORNA as a whole, it is abundantly clear that the Act does not punish sex offenders for the *intrastate* failure to register.  To the contrary, the federal government gains criminal jurisdiction only when a person required to register under SORNA travels in *interstate* commerce.  Hinen, 487 F. Supp. 2d at 757-58; Fuller, No. 07-462, Doc. 24 at 10.

Moreover, were the court to parse SORNA as defendants suggest, the registration provision would be authorized by the Necessary and Proper Clause, which grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers.  U.S. CONST. art. I, § 8, cl. 18.  In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to "regulate even those intrastate activities that do not themselves substantially affect interstate commerce," so long as the Congressional enactment is "necessary to make a regulation of interstate commerce effective."  Gonzales, 545 U.S. at 35 (Scalia, J., concurring); see also Thomas, 524 F. Supp. 2d at 921.  To satisfy the Necessary and Proper Clause, the means chosen need not be "narrowly tailored or absolutely necessary" to attain the desired end, but must be "reasonably adapted" thereto.  Thomas, 524 F. Supp. 2d at 921-22 (citing Gonzales, 545 U.S. at 37).  Here, the court finds that SORNA's registration provision is reasonably adapted to meet the Congressional purpose of monitoring sex offenders who transgress state lines.  As the Thomas court astutely observed, "Congress may have determined that it was unworkable, as a practical matter, to devise and enforce a sex-offender registration system that could monitor only those sex offenders who traveled in interstate commerce."  Id. at 922.  While SORNA may require the registration of individuals who do not intend to travel in interstate commerce, such a requirement is quite reasonably adapted to Congressional goals.  Accordingly, the court concludes that SORNA's registration provision is authorized by the Necessary and Proper Clause.

In the exercise of caution, the court also notes that SORNA likely withstands Commerce Clause scrutiny because it regulates an activity that is substantially related to interstate commerce.  See Lopez, 514 U.S. at 558-59.  A court need only ensure that a rational basis exists to conclude that a regulated activity substantially affects interstate commerce.  United States v. Parker, 108 F.3d 28, 30 (3d Cir. 1997) ("Our job . . . is not to second-guess the legislative judgment of Congress that [the regulated activity] substantially affects interstate commerce, but rather to ensure that Congress had a rational basis for that conclusion."); see also United States v. Akers, No. 07-0086, 2008 WL 914493, at *3 (N.D. Ind. Apr. 3, 2008).  A number of courts have held that SORNA's focus on the movement of potentially dangerous individuals between states provides the rational basis required to conclude that failing to register in one state substantially affects interstate commerce.  Zuniga, 2008 WL 2184118, at *17-19; Craft, 2008 WL 1882904, at *21; Dixon, 2007 WL 4553720, at *5; United States v. Holt, No. 07-0630, 2008 WL 1776495, at *3 (S.D. Iowa Apr. 14, 2008); United States v. Hacker, No. 07-0243, 2008 WL 312689, at *2, 6 (D. Neb. Feb. 1, 2008); Akers, 2008 WL 914493, at *3; United States v. May, Nos. 07-0164, 07-0059, 2007 WL 2790388, at *7 (S.D. Iowa Sept. 24, 2007).  The *ratio decidendi* of these holdings have centered on the fact that SORNA contains an "express jurisdictional element" that limits prosecutions to those persons who fail to register and "travel[] in interstate . . . commerce."  18 U.S.C. § 2250; see Lopez, 514 U.S. at 561-62 (suggesting that the addition to the federal gun possession statute in question of an "express jurisdictional element" requiring a connection between the

17

weapon and interstate commerce would have rendered the statute constitutional under the Commerce Clause); United States v. Morrison, 529 U.S. 598, 613 (2000) (stating that "a jurisdictional element would lend support to the argument" that a statute was "sufficiently tied to interstate commerce" to withstand Commerce Clause challenge); see also Akers, 2008 WL 914493, at *3; Utesch, 2008 WL 656066, at *14; May, 2007 WL 2790388, at *7; United States v. Lawrance, No. 07-0166, 2007 WL 5271934, at *6-7 (W.D. Okla. Sept. 5, 2007); Gould, 526 F. Supp. at 547.  Having concluded that SORNA appropriately regulates persons in interstate commerce, the court need not address the propriety of these courts' conclusions.

### C. __Due Process Clause__

Defendants present two distinct due process challenges to SORNA.  First, they assert that it is a violation of due process to punish them for failing to register when they were unable to do so.  See United States v. Dalton, 960 F.2d 121, 124 (10th Cir. 1992) (holding that it is a violation of due process to prosecute someone for a crime that requires as "an essential element" the "failure to do an act that [the defendant] is incapable of performing").  Second, they argue that they had no duty to register pursuant to SORNA because they were not notified of the Act's requirements.  The court turns first to the issue of defendants' purported inability to comply with SORNA.

1.    **Implementation**

Defendants argue that they were unable to comply with SORNA because it had not yet been implemented by the relevant states and that, as a result, punishing them for violating SORNA violates the Due Process Clause.  (See No. 07-500, Doc. 23 at 42; No. 08-196, Doc. 21 at 23-25.)  The court disagrees.  SORNA merely obligates a sex offender to inform the relevant jurisdiction or jurisdictions "of all changes in the information required for that offender in the sex offender registry." See 42 U.S.C. § 16913(c); see also Fuller, No. 07-462, Doc. 24 at 12 n.4.  While SORNA imposes additional requirements upon states to improve their registry systems, these obligations are separate and distinct from those imposed upon sex offenders.  See 42 U.S.C. §§ 16913 (listing registry requirements for sex offenders), 16912 (listing registry requirements for states); see also Fuller, 2008 WL 2437869, at *2-3.  A state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register all information that is required by then-existing state law.  See Fuller, 2008 WL 2437869, at *2-3; Fuller, No. 07-462, Doc. 24 at 12 n.4; United States v. David, No. 08-0011, 2008 WL 2045827, at *3-5 (W.D.N.C. Apr. 18, 2008) ("The actions of [a state] are simply not relevant as to whether SORNA applies to defendant."); Ditomasso, 552 F. Supp. 2d at ___ ("There is no mention anywhere in SORNA that the registration obligation does not become effective until the state implements the additional registration requirements of SORNA"); Adkins, 2007 WL 4335457, at *6 ("The fact that the states have not yet met their obligations under SORNA . . . is of no consequence in

19

determining whether it was possible for the Defendant to meet his own obligations under the act."); <u>Gould</u>, 526 F. Supp. at 542 ("An offender's registration under SORNA does not hinge on implementation in his state."); <u>Pitts</u>, 2007 WL 3353423, at *7 ("Compliance does not require the offender to register in a jurisdiction that has enacted legislation complying with the requirements of [SORNA]").  Every district court to confront the issue has held that a defendant could comply with SORNA even when the state in which the defendant was required to register had not yet implemented the federal law.  <u>Fuller</u>, 2008 WL 2437869, at *2-3; <u>Waybright</u>, 2008 WL 2380946, at *15-16; <u>David</u>, 2008 WL 2045827, at *3-5; <u>Ditomasso</u>, 552 F. Supp. 2d at ___; <u>Akers</u>, 2008 WL 914493, at *7; <u>Utesch</u>, No. 07-105, 2008 WL 656066, at *8; <u>United States v. Hester</u>, No. 07-376, 2008 WL 351677, at * 2 (N.D.N.Y. Feb. 7, 2008); <u>Dixon</u>, 2007 WL 4553720, at *4; <u>Gould</u>, 526 F. Supp. at 542; <u>Adkins</u>, 2007 WL 4335457, at *6; <u>Pitts</u>, 2007 WL 3353423, at *7.

In the instant case, the three relevant jurisdictions – Pennsylvania, New York, and Florida – each have sex offender registration programs which defendants could have utilized to satisfy their SORNA obligations.  <u>See</u> 42 PA. CONS. STAT. ANN. §§ 9791-9799.9; N.Y. CORRECT. LAW §§ 168-168-w (McKinney); FLA. STAT. ANN. § 775.21 (West).  While these registration programs likely do not meet each and every SORNA requirement, defendants are not being prosecuted for providing less information than SORNA requires.  Rather, they are charged with outright failure to register.  <u>Utesch</u>, 2008 WL 656066, at *8.  Given the absence of any evidence to suggest that defendants were prevented from utilizing the appropriate state

20

registration programs, see 18 U.S.C. § 2250(b) (setting forth the affirmative defense of the existence of uncontrollable circumstances that prevented proper SORNA registration), the court must find that it was possible for defendants to comply with SORNA and that no due process violation has resulted from their prosecution thereunder. Accordingly, the court will deny defendants' motions to the extent they are premised on the relevant jurisdictions' lack of implementation of SORNA.

      2.    **Notice**

      Defendants argue that they cannot be prosecuted under SORNA because they were not afforded fair notice of its registration requirements. (See No. 07-500, Doc. 23 at 43-45.) Generally, "ignorance of the law" does not excuse criminal activity. Lambert v. California, 355 U.S. 225, 228 (1957). However, principles of due process place some narrow limits on this maxim when it is applied to "wholly passive" conduct that does not alert the actor that he or she is engaging in criminal activity. Id.; Ditomasso, 552 F. Supp. 2d at ___ (noting that Lambert carved out a "very limited exception to the general principle that ignorance of the law is not an excuse"); Craft, 2008 WL 1882904, at *5-8, 17-19 (same). In Lambert, the Supreme Court considered whether a defendant, who had no actual knowledge of a city ordinance that made it unlawful for any felon "to be or remain in Los Angeles for more than five days without registering," could be convicted for failing to register pursuant to the ordinance. 355 U.S. at 226. The Court concluded that the ordinance violated due process as applied because the defendant had no actual knowledge of the registration requirement and the circumstances were not such

that they "might move [the defendant] to inquire as to the necessity of registration." Id. at 229.  The Court expressly noted that due process "does not require that a defendant have actual knowledge of a duty to register where the facts demonstrate 'proof of the probability'" that he or she had such knowledge.  Fuller, No. 07-462, Doc. 24 at 10-12 (quoting Lambert, 355 U.S. at 229-30).  In other words, "constructive knowledge of an affirmative duty to register" is sufficient to satisfy due process requirements.  Id.

SORNA criminalizes the same type of "wholly passive" conduct that was at issue in Lambert.  However, the similarities between SORNA and the city ordinance at issue in Lambert end there.  In applying the principles elucidated in Lambert to SORNA, an overwhelming majority of courts have held that a defendant's knowledge of his or her obligation to register as a sex offender pursuant to state law demonstrates proof of the probability that he or she had knowledge of his or her duty to register under SORNA.  Fuller, No. 07-462, Doc. 24 at 10-12; Waybright, 2008 WL 2380946, at *17; Cochran, 2008 WL 2185427, at *1; United States v. Glenn, No. 08-50018, 2008 WL 2065919, at *1-2 (W.D. Ark. May 13, 2008); David, 2008 WL 2045830, at *7-8; Ditomasso, 552 F. Supp. 2d at ___; Craft, 2008 WL 1882904, at *7; Holt, 2008 WL 1776495, at *2; David, 2008 WL 2405827, at *5-6; Akers, 2008 WL 914493, at *6; Villagomez, 2008 WL 918639, at *3-4; Hester, 2008 WL 351677, at * 2; Utesch, 2008 WL 656066, at *9; United States v. Bartlett, No. 08-20006, 2008 WL 440828, at *1 (W.D. Ark. Feb. 13, 2008); Howell, 2008 WL 313200, at *8; Samuels, 543 F. Supp. 2d at 673-74; LeTourneau, 534 F. Supp. 2d at 722-23; Dixon,

2007 WL 4553720, at *4; <u>Elliott</u>, 2007 WL 4365599, at *7; <u>Gould</u>, 526 F. Supp. at 544-

45; <u>United States v. Mantia</u>, No. 07-60041, 2007 WL 4730120, at *6 (W.D. La. Dec. 10,

2007); <u>Adkins</u>, 2007 WL 4335457, at *5; <u>Cardenas</u>, 2007 WL 4245913, at *13-14; <u>Pitts</u>,

2007 WL 3353423, at *7; <u>Ambert</u>, 2007 WL 2949476, at *2; <u>Beasley</u>, 2007 WL 3489999,

at *9; <u>United States v. Lovejoy</u>, 516 F. Supp. 2d 1032, 1036-37 (D.N.D. 2007); <u>May</u>,

2007 WL 2790388, at *6; <u>Kent</u>, 2007 WL 2746773, at *1; <u>Lawrance</u>, 2007 WL 5271934,

at *8-9; <u>Gonzales</u>, 2007 WL 2298004, at *3-6; <u>United States v. Roberts</u>, No. 07-70031,

2007 WL 2155750, at *2 (W.D. Va. July 27, 2007); <u>Hinen</u>, 487 F. Supp. 2d at 754;

<u>United States v. Mitchell</u>, No. 07-20012, 2007 WL 2609784, at *2 (W.D. Ark. Sept. 6,

2007).[8]  A defendant's successful compliance with state requirements is further

evidence that the defendant understands his or her responsibility to register and is

able to fulfill that responsibility.  David, 2008 WL 2045830, at *8-9; see Holt, 2008 WL

1776495, at *2; Akers, 2008 WL 914493, at *6; Mitchell, 2007 WL 2609784, at *2; see

also Gould, 526 F. Supp. at 544-45 ("[The defendant's] understanding of the registry

process in Pennsylvania and West Virginia demonstrates that he was not a passive

participant who was unaware of the illegality of failing to register.").  Courts have

also cited a defendant's signing of a "Notification of Sex Offender Responsibility"

form as an indicator that the defendant understood that he or she was obligated to

---

[8]  A minority of district courts have reached the opposite conclusion, holding that notice of state registration requirements was insufficient to provide constructive notice of the duty to register pursuant to SORNA.  See Aldrich, 2008 WL 427483, at *5-6 (holding that the defendant could not have "knowingly" violated SORNA because his conduct occurred *before* SORNA had been enacted); United States v. Barnes, No. 07-0187, 2007 WL 2119895, at *5 (S.D.N.Y. July 23, 2007) (holding that a defendant lacked adequate notice where his interstate travel occurred *prior* to the Attorney General's clarification that SORNA's requirements apply to all sex offenders); United States v. Smith, 528 F. Supp. 2d 615, 620 (S.D.W. Va. 2007) (finding a lack of constitutionally adequate notice where the defendant was arrested *on the day* that the Attorney General issued its SORNA regulations). Each of these cases is factually distinguishable, involving defendants whose failure to register occurred before the enactment of SORNA or regulations promulgated thereunder.  In contrast, defendants in the matter *sub judice* traveled in interstate commerce and failed to update their registrations after the promulgation of SORNA's interpretative regulations in February of 2007.  (See No. 07-500, Doc. 1 at 3 (alleging that defendant Shenandoah traveled in interstate commerce and failed to update his registration beginning on or about August of 2007); No. 08-0196, Doc. 1 at 3 (alleging that defendant Douglas traveled in interstate commerce and failed to update his registration beginning on or about February of 2008); accord Lovejoy, 516 F. Supp. 2d at 1036-37.  Given these factual distinctions and the overwhelming weight of authority to the contrary, the court declines to extend the aforementioned minority position to the facts of this case.

update his or her address information upon relocating and that he or she could be charged with a state offense of failing to register if he or she neglected to do so. See Waybright, 2008 WL 2380946, at *17; Holt, 2008 WL 1776495, at *2; David, 2008 WL 2405827, at *5-6; Hester, 2008 WL 351677, at * 2; Bartlett, 2008 WL 440828, at *1; Mitchell, 2007 WL 2609784, at *2.   Hence, courts have reasoned that a defendant "can violate SORNA by failing to register or update a SORNA imposed registration obligation *or a registration obligation imposed by another law.*" Zuniga, 2008 WL 2184118, at *15 (emphasis added); Glenn, 2008 WL 2065919, at *1-2; Bartlett, 2008 WL 440828, at *1; Mitchell, 2007 WL 2609784, at *2; see also David, 2008 WL 2045830, at *6-8 ("[A] violation of *any* registration statute is also a violation of SORNA." (emphasis added)).   Accordingly, a defendant may violate SORNA's criminal provisions without possessing either actual or constructive knowledge of his or her duty to register pursuant to SORNA.   Actual or constructive knowledge of a state registration requirement is sufficient to satisfy due process. Zuniga, 2008 WL 2184118, at *15.

Even absent the state registration requirements, courts have held that the nature of certain crimes places the individuals convicted thereof on constructive notice that they may be subjected to future regulation.  Hinen, 487 F. Supp. 2d at 754.  As succinctly stated by the District Court for the Western District of Virginia:

> Few offenders have ever had relevant sections of the U.S. Code read to them
> before committing their crimes, yet they are expected to comply with it even
> so.  Owners of firearms, doctors who prescribe narcotics, and purchasers of
> dyed diesel are all expected keep themselves abreast of changes in the law
> which affect them, especially because such people are on notice that their
> activities are subject to regulation.  Sex offenders are no different; they must
> comply with the law even when it changes suddenly and without notice, and
> they are well advised to periodically check for changes because they are
> particularly subject to regulation.

Roberts, 2007 WL 2155750, at *2 (internal citations omitted).  As a sex offender, a

defendant cannot reasonably expect to be free from regulation when he or she

travels to another jurisdiction.  Hinen, 487 F. Supp. 2d at 754 (stating that

committing a sex offense removes the defendant "from the class of ordinary citizens

to the point that [he or she] cannot reasonably expect to be free from regulation").

Accordingly, failure to register as a sex offender is factually distinct from the failure

to register at issue in Lambert because the nature of a sex crime puts the offender

on notice that he or she should inquire about the necessity of registration.  See

Lambert, 355 U.S. at 229.

In the instant case, the indictments allege that both defendants were acutely

aware of their obligations to register as sex offenders and to update their

registrations pursuant to state law.  Both defendants previously signed Sexual

Offender Registration Notification forms, placing them on notice of their legal

obligations to provide their current addresses and employment information to law

enforcement.  (See No. 07-0500, Doc. 1 at 1-2; No. 08-0196, Doc. 1 at 1-2.)  The court

finds that defendants possessed at least constructive notice of their duties to

register pursuant to SORNA.  Their status as sex offenders should have alerted

26

them to their responsibility to maintain their registrations, particularly when they elected to engage in interstate travel.  Given their knowledge of state registration requirements, defendants' failures to register appear to be the result of active decisions to evade registration requirements, rather than the type of wholly passive conduct described in <u>Lambert</u>.  <u>David</u>, 2008 WL 2045830, at *7-8.  Were defendants charged with technical violations of SORNA – e.g. an attempted but flawed registration – their arguments that they lacked notice of SORNA's specific requirements may hold more weight.  <u>Gonzales</u>, 2007 WL 2298004, at *3-6 ("The government does not charge Defendant with violating some obscure registration requirement in fine print; rather, the government charges Defendant with *wholly* failing to register and update the registration required of a sexual offender.").  However, defendants made no efforts to comply with the state registration requirements about which they had ample notice.  <u>See</u> <u>David</u>, 2008 WL 2045830, at *7-8.  Under the circumstances, defendants' arguments that they neglected to comply with SORNA because they lacked notice of its provisions must fail.

Putting aside these constitutional standards, defendants argue that the text of SORNA itself requires that they be given notice before being prosecuted for violating its provisions.  42 U.S.C § 16917 imposes requirements upon states to notify sex offenders of their duties to register pursuant to SORNA and calls upon the Attorney General to prescribe rules for the notification of certain sex offenders.  Consistent with this mandate, the Attorney General issued proposed notification guidelines on May 30, 2007.  <u>See</u> The National Guidelines for Sex Offender

27

Registration and Notification, 72 Fed. Reg. 30,210 (May 30, 2007). However, nothing

in the plain language of SORNA indicates that Congress intended a state's

compliance with § 16917 to be a precondition to prosecution for failing to comply

with SORNA. As stated by the United States District Court for the Western District

of North Carolina:

> [I]t is clear that [the] notification [required by § 16917] would be based on the
> additional information that SORNA requires a sex offender to provide when
> he registers and not on the fact of registration. Thus, if these guidelines are
> eventually adopted, it may well be a defense to a SORNA prosecution that
> notice was not provided if such prosecution is based on a failure to give or
> provide the additional information required by SORNA. In this case,
> defendant is not charged with violating any provision of SORNA that creates
> a new obligation on sex offenders-such as periodic reporting-but instead
> defendant is charged with violating those provisions for which he did have
> prior notice, i.e., registering in any state wherein he resided.

David, 2008 WL 2405827, at *5-6. As previously discussed, in the instant case,

defendants made no efforts to register and are not being prosecuted for failing to

satisfy all of SORNA's requirements. Defendants possessed sufficient notice of

their duties to register pursuant to state law, and the additional notification

requirements of SORNA are simply irrelevant to the pending charges.

Finally, defendants argue that without notice they could not have possessed

the *mens rea* required for a SORNA violation. SORNA's criminal provisions make it

a crime to "*knowingly* fail[] to register or update a registration." 18 U.S.C. § 2250(a)

(emphasis added). There is simply no evidence to suggest that by inserting the

word "knowingly" into 18 U.S.C. § 2250(a), Congress intended to create a specific

intent crime. See Ditomasso, 552 F. Supp. 2d at ___ (citing United States v. Flores,

753 F.2d 1499, 1505 (9th Cir. 1985), for the proposition that a statute's "use of the term 'knowingly' to modify a specific action while omitting terms such as 'intent' or 'willfully,' which traditionally accompany specific intent crimes, indicates that Congress did not require specific intent").  If Congress had intended such a result, it could have made it a crime for a defendant to "knowingly fail to register or update a registration *with the intent to violate* SORNA."  <u>Ditomasso</u>, 552 F. Supp. 2d at ___ (emphasis in original); <u>Gonzales</u>, 2007 WL 2298004, at *3-6; <u>see also</u> BLACK'S LAW DICTIONARY 814 (8th ed. 2004) (defining "specific intent" as "the intent to accomplish the precise criminal act that one is later charged with").  Receipt of notice is not an element of a criminal violation of SORNA.  <u>See</u> <u>Zuniga</u>, 2008 WL 2184118, at *15 ("[R]eceipt of notice . . . is not an element of a[n] 18 U.S.C. § 2250 offense."); <u>Samuels</u>, 543 F. Supp. 2d at 673-74 ("If failure to have specific knowledge of the particular statute you have been accused of violating were a prerequisite to conviction, there would rarely, if ever, be a conviction.  Due process does not require specific notice."); <u>Dixon</u>, 2007 WL 4553720, at *4 ("[The defendant] need not, to have committed the federal crime, have been told by some official that he had to register pursuant to SORNA.").  Where an indictment alleges that a defendant "knowingly" violated SORNA, it sufficiently addresses the intent element of SORNA's criminal provision.  <u>Zuniga</u>, 2008 WL 2184118, at *15; <u>Gonzales</u>, 2007 WL 2298004, at *3-6 ("The mens rea element of § 2250 may be satisfied by proving "that a defendant knowingly failed to provide the information which SORNA requires.").  Whether the defendant possessed the requisite knowledge for a

SORNA violation is a question of fact that should be reserved for the jury and should not be decided in the restricted posture of a motion to dismiss the indictment. <u>Zuniga</u>, 2008 WL 2184118, at *15; <u>Cardenas</u>, 2007 WL 4245913, at *13-14; <u>Gonzales</u>, 2007 WL 2298004, at *3-6. In the action *sub judice*, both indictments allege that defendants "knowingly" failed to register. (<u>See</u> No. 07-0500, Doc. 1 at 3; No. 08-0196, Doc. 1 at 3.) Accordingly, whether defendants possessed the requisite knowledge required by § 2250 is an issue that must be reserved for the jury.

For the aforementioned reasons, the court will deny defendants' motions to dismiss to the extent they assert that defendants' lack of notice of SORNA's requirements invalidates their prosecutions.

### D.   <u>Tenth Amendment</u>

Defendants argue that SORNA violates the Tenth Amendment by requiring states "to accept federally required sex offender registrations before their state chooses to adopt the SORNA provisions voluntarily." (No. 07-500, Doc. 23 at 31; No. 08-196, Doc. 21 at 40-41.) The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The Tenth Amendment prevents the federal government from either "issu[ing] directives requiring the States to address particular problems" or commandeering state officials "to administer or enforce a federal regulatory program." <u>Printz v. United States</u>, 521 U.S. 898, 935 (1997); <u>see also</u> <u>Waybright</u>, 2008 WL 2380946, at *11-12; <u>Zuniga</u>, 2008 WL 2184118, at *19-20.

30

Our sister court in the District Court for the District of New Jersey has held

that "private individuals lack standing to pursue claims based on the Tenth

Amendment."  See Interactive Media Entm't & Gaming Ass'n v. Gonzales, No. 07-

2625, 2008 U.S. Dist. LEXIS 16903, at *35 (D.N.J. Mar. 4, 2008) (citing Brooklyn

Legal Svcs. Corp. v. Legal Svcs. Corp., 462 F.3d 219, 234 (2d Cir. 2006) (holding that

only a state or its instrumentality has standing to assert a Tenth Amendment

violation); Medeiros v. Vincent, 431 F.3d 25, 34 (1st Cir. 2005) (same)); see also Tenn.

Elec. Power Co. v. Tenn. Valley Auth., 306 U.S. 118, 144 (1939) ("[T]he appellants,

absent the states or their officers, have no standing in this suit to raise any question

under the [Tenth] amendment.")).  We agree.  The caselaw is clear.  Only a state or

instrumentality has standing to present a Tenth Amendment claim.  The court finds

that defendants lack standing to assert the instant Tenth Amendment challenge to

SORNA.  See Zuniga, 2008 WL 2184118, at *19-20.

Assuming *arguendo* that defendants had standing to assert a Tenth

Amendment challenge, their claim would nevertheless fail because Congress

enacted SORNA pursuant to its enumerated powers.  There can be no violation of

the Tenth Amendment when Congress acts "under one of its enumerated powers."

See United States v. Kukafka, 478 F.3d 531, 537 (3d Cir. 2007).  As previously

discussed, Congress properly enacted SORNA pursuant to the Commerce Clause,

see supra Part III.A.2., which protects SORNA from a Tenth Amendment claim, see

Fuller, No. 07-462, Doc. 24 at 12; Zuniga, 2008 WL 2184118, at *19-20; Craft, 2008 WL

1882904, at *11, 21-23; <u>Akers</u>, 2008 WL 914493, at *4; <u>Hacker</u>, 2008 WL 312689, at *3, 6; <u>Cardenas</u>, 2007 WL 4245913, at *14.

Moreover, a second enumerated power – the spending power of Article I, § 8, cl. 1 – insulates SORNA from Tenth Amendment challenge.  The spending power authorizes Congress to "attach conditions on the receipt of federal funds . . . to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." <u>South Dakota v. Dole</u>, 483 U.S. 203, 206 (1987).  SORNA does not force the states to perform any function.  <u>See Cochran</u>, 2008 WL 2185427, at *2; <u>see also Ditomasso</u>, 552 F. Supp. 2d at ___ ("[T]he state component of SORNA is voluntary."); <u>Craft</u>, 2008 WL 1882904, at *21-23 ("SORNA does not require a state to change its law or procedures to comply with the federal sex offender registration program."). Instead, SORNA merely offers financial incentives to states to encourage them to comply with SORNA requirements.  <u>Waybright</u>, 2008 WL 2380946, at *12; <u>see also</u> 42 U.S.C. § 16925 (stating that states who fail to "substantially implement [SORNA] shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year").  This method of legislation is authorized by the spending power and does not run afoul of the Tenth Amendment.  <u>See South Dakota v. Dole</u>, 483 U.S. 203, 206-211 (1987) (discussing the interplay between the spending power of Article I, § 8, cl. 1 and the Tenth Amendment); <u>see also Waybright</u>, 2008 WL 2380946, at *12 (holding that SORNA is authorized by the spending power); <u>Zuniga</u>, 2008 WL 2184118, at *19-20 (same); <u>Craft</u>, 2008 WL 1882904, at *21-23 (same); <u>David</u>, 2008 WL

2045827, at *9 (same); Utesch, 2008 WL 656066, at *14-15 (same); Hacker, 2008 WL

312689, at *3 (same); Cardenas, 2007 WL 4245913, at *14 (same); Gould, 526 F. Supp.

at 549 (same).[9]

### E.   Right to Travel

Defendant Shenandoah argues that SORNA violates the right to travel by

imposing harsher punishments upon sex offenders who travel in interstate

commerce than upon those who remain intrastate.[10]   (See No. 07-500, Doc. 23 at 33-

39.)  The right to travel has been recognized as a fundamental right by the United

States Supreme Court.   See Jones v. Helms, 452 U.S. 412, 418 (1981); see also

Shapiro v. Thompson, 394 U.S. 618, 629-31 (1969).  The right to travel encompasses

the following three components:  (1) "the right of a citizen of one State to enter and

---

[9]  Defendants argue that because no state has yet accepted Congress'
invitation to change its sex offender registration laws to comply with SORNA, the
spending power does not insulate SORNA from Tenth Amendment concerns.
Specifically, defendants allege that the states are being forced to "accept federally
required sex offender registrations" before they have voluntarily chosen to adopt
SORNA. (No. 08-196, Doc. 21 at 41.)  This argument contains a logical fallacy.  It
assumes that SORNA forces state officials to take additional steps to register sex
offenders beyond those already required by the individual state systems.  In reality,
all states had registration systems prior to SORNA's enactment, and SORNA
imposes no additional obligations upon these states with respect to those
registration systems unless and until the states choose to comply with SORNA.  See
Utesch, 2008 WL 656066, at *15 (stating that state "registration requirements have
not changed one iota . . . after the enactment of SORNA"); see also Akers, 2008 WL
914493, at *4; Pitts, 2007 WL 3353423, at *9.  The states are not being forced to alter
their registration requirements but are merely being invited to do so in exchange
for a financial incentive, consistent with the spending power.

[10]  Defendant Douglas does not assert a right to travel argument.  (See No. 08-
196, Doc. 20 at 2-3.)

to leave another State," (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) "the right to be treated like other citizens of [the second] State" once permanent residency in the second state is elected. Saenz v. Roe, 526 U.S. 489, 500 (1999). The textual origin of the right to travel is uncertain; it has been held to derive from the Privileges and Immunities Clauses of the Fourteenth Amendment and Article IV, § 2, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. Jones, 452 U.S. at 418-19; Shapiro, 394 U.S. at 631; see also Maldonado v. Houstoun, 157 F.3d 179, 191 (3d Cir. 1998). Regardless of its origin, the Court has routinely held that statutes that *unreasonably* burden the right to travel are subject to strict scrutiny and "must pass muster under the compelling-state-interest test." Maher v. Roe, 432 U.S. 464, 488 (1977); see also Maldonado, 157 F.3d at 188-89. However, "mere burdens on a person's ability to travel from state to state" which are not unreasonable do not necessarily violate the right to travel. See Pitts, 2007 WL 3353423, at *9 (citing Saenz, 526 U.S. at 499); Gonzales, 2007 WL 2298004, at *8 (citing Saenz, 526 U.S. at 499).

As a threshold matter, it is clear that the federal government has a compelling interest in preventing sexual offenses by alerting citizens and law enforcement officers of the whereabouts of sex offenders. Pitts, 2007 WL 3353423, at *9; Gonzales, 2007 WL 2298004, at *8 ("The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to

34

the whereabouts of those that could reoffend."); cf. Doe v. Moore, 410 F.3d 1337, 1348-49 (11th Cir. 2006) (interpreting the Florida counterpart to SORNA and finding that the state interest in protecting children and in "preventing future sexual offenses" was significant enough to outweigh the inconvenience imposed by requiring sex offenders to register upon relocating to a new state).

SORNA's registration requirements are narrowly tailored to serve this compelling interest and do not unreasonably burden the right to travel.  See Pitts, 2007 WL 3353423, at *9.[11]  Without SORNA's interstate travel provisions, sex offenders could subvert SORNA's purpose of crime prevention by traveling in interstate commerce to commit sex offenses without any attendant requirement to notify law enforcement.  Gonzales, 2007 WL 2298004, at *8.  Moreover, SORNA treats sex offenders differently not because of their status as new or temporary residents of a state but because of their status as sex offenders.  See Doe, 410 F.3d at 1348-49 (11th Cir. 2006); Waybright, 2008 WL 2380946, at *13 ("[SORNA] does not require states to treat sex offenders who relocate differently than sex offenders already present in a state.  Rather, under SORNA, all sex offenders, whether new or long-time residents, must register.").  Finally, SORNA does not prevent sex offenders from traveling in interstate commerce or from relocating to other states, but merely requires them to notify law enforcement officials when they do so.

---

[11] Every district court that has confronted the issue *sub judice* has held that SORNA does not unreasonably burden the right to travel.  See Waybright, 2008 WL 2380946, at *12-13; Cardenas, 2007 WL 4245913, at *14; Pitts, 2007 WL 3353423, at *9; Ambert, 2007 WL 2949476, at *4; Gonzales, 2007 WL 2298004, at *8.

Waybright, 2008 WL 2380946, at *13 (citing Doe, 410 F.3d at 1348-49 (noting that sex offenders were not prevented from entering or leaving a state, but were merely required to notify law enforcement when they did so).  The court finds that SORNA's requirements burden a sex offender's right to travel only to the limited extent necessary to serve the government's compelling interest in protecting its citizens from sex crimes.  Accordingly, the court will deny Shenandoah's motion to dismiss to the extent it is premised upon a violation of the right to travel.

### F.    Nondelegation Doctrine

Defendants argue that Congress violated the nondelegation doctrine by authorizing the Attorney General to determine SORNA's retroactivity.  (See No. 07-500, Doc. 23 at 45-49; No. 08-196, Doc. 21 at 30-32.)  The nondelegation doctrine "is rooted in the principle of separation of powers that underlies out tripartite system of Government."  Mistretta v. United States, 488 U.S. 361, 371 (1989).  Article I, section 1 of the Constitution provides, "All legislative powers herein granted shall be vested in a Congress of the United States."  U.S. CONST. art I., § 1.  "This section is both a grant of power to the Congress and a limitation upon its use" because it prohibits Congress from delegating its legislative power to others.  United States v. Touby, 909 F.2d 759, 764 (3d Cir. 1990); see also Mistretta, 488 U.S. at 371-72 ("[T]he integrity and maintenance of the system of government ordained by the Constitution mandate that Congress generally cannot delegate its legislative power to another Branch.").  However, the nondelegation doctrine does not prevent Congress "from seeking assistance, within proper limits, from its coordinate

36

Branches." <u>Hussein v. Attorney Gen. of U.S.</u>, No. 07-1211, 2008 WL 934056, at *3 (3d

Cir. Apr. 4, 2008); <u>see also</u> <u>Mistretta</u>, 488 U.S. at 372.  To withstand constitutional

scrutiny, a Congressional delegation of authority must delineate "an *intelligible*

*principle* to which the person or body authorized to exercise the delegated authority

is directed to conform." <u>Touby</u>, 909 F.2d at 764 (emphasis in original).  In applying

this "intelligible principle" test, the United States Supreme Court has given

Congress wide latitude in delegating its powers and has upheld every congressional

delegation of power that has confronted it since 1935. <u>Id.</u> at 765.  The Court has

provided that a Congressional enactment will satisfy the nondelegation doctrine if it

clearly delineates the public policy underlying the act, identifies the public agency

which is to apply the act, and establishes clear parameters of the delegated

authority. <u>Mistretta</u>, 488 U.S. at 372-73.

When enacting SORNA, Congress "delegated to the Attorney General the

authority to apply the new regulations to sex offenders convicted before the

enactment of SORNA and . . . to promulgate regulations for other sex offenders who

are unable to comply with the initial registration requirement." <u>United States v.</u>

<u>Natividad-Garcia</u>, No. 08-0025, 2008 WL 2353357, at *4 (W.D. Tex. June 4, 2008)

(citing 42 U.S.C. § 16913(d)).[12]  Every court that has confronted the issue has held

that this delegation of authority is not so broad as to contravene the nondelegation

doctrine. <u>See</u> <u>Natividad-Garcia</u>, 2008 WL 2353357, at *4; <u>Waybright</u>, 2008 WL

[12]  <u>See</u> <u>supra</u> note 3 for the full text of 42 U.S.C. § 16913(d).

37

2380946, at *14-15; <u>Fuller</u>, No. 07-462, Doc. 24 at 12-13; <u>Zuniga</u>, 2008 WL 2184118, at

*8-14; <u>Cochran</u>, 2008 WL 2185427, at *2; <u>David</u>, 2008 WL 2045827, at *6-7; <u>Akers</u>,

2008 WL 914493, at *4; <u>Utesch</u>, 2008 WL 656066, at *10; <u>Hacker</u>, 2008 WL 312689, at

*3, 7; <u>Howell</u>, 2008 WL 313200, at *6-7; <u>Samuels</u>, 543 F. Supp. 2d 669, 677-78;

<u>LeTourneau</u>, 534 F. Supp. 2d at 724-25; <u>Dixon</u>, 2007 WL 4553720, at *6; <u>Elliott</u>, 2007

WL 4365599, at *7; <u>Gould</u>, 526 F. Supp. at 545-46; <u>Cardenas</u>, 2007 WL 4245913, at *8-

10; <u>Ambert</u>, 2007 WL 2949476, at *7; <u>Beasley</u>, 2007 WL 3489999, at *9; <u>Lovejoy</u>, 516

F. Supp. 2d at 1034-35; <u>May</u>, 2007 WL 2790388, at *5-6; <u>Mason</u>, 510 F. Supp. 2d at

927-28; <u>Hinen</u>, 487 F. Supp. 2d at 751-53; <u>United States v. Kelton</u>, No. 07-0030, 2007

WL 2572204, at *1 (M.D. Fla. Sept. 5, 2007); <u>Mantia</u>, 2007 WL 4730120, at *6.[13]

---

[13] The court notes that at least one district court has expressed concern, in
*obiter dicta*, that SORNA may violate the nondelegation doctrine. <u>See Aldrich</u>, 2008
WL 427483, at *6 n.5. However, the court's conclusion in <u>Aldrich</u> was premised on
the erroneous assumption that Congress's delegation of authority "allowed the
Attorney General discretion to legislate the length of time, scope and reach of the
retroactive application" of SORNA. <u>Id.</u>; <u>cf. United States v. Kapp</u>, 487 F. Supp. 2d
536, 543 (M.D. Pa. May 16, 2007) (finding that SORNA did not apply to offenders
with pre-SORNA convictions until the Attorney General had promulgated its
regulations).  Numerous courts have held that SORNA did not empower the
Attorney General to determine the Act's retroactive application *in toto*. <u>See
Waybright</u>, 2008 WL 2380946, at *14-15; <u>Zuniga</u>, 2008 WL 2184118, at *8-14; <u>Elliott</u>,
2007 WL 4365599, at *7; <u>Beasley</u>, 2007 WL 3489999, at *9; <u>Mason</u>, 510 F. Supp. 2d at
927-28.  Instead, these courts have held that the delegation of authority was merely
intended as a "gap-filling provision to insure the statutory purpose is effectuated
when sex offenders fall outside the purview of Section 16913(b)." <u>Mason</u>, 510 F.
Supp. 2d at 927-28.

As succinctly stated by the United States District Court for the Western

District of Texas:

> [SORNA's] delegation was proper since Congress established a clear policy of
> protecting the public from sex offenders and offenders against children, was
> specific that the delegation was to the Attorney General, and established
> boundaries of the delegation by limiting the applicability of the Attorney
> General's rules to those convicted before the enactment of SORNA and to
> those who were unable to comply with the initial registration.

Natividad-Garcia, 2008 WL 2353357, at *4; see also Howell, 2008 WL 313200, at *7

(discussing Congress's clear statement of purpose in SORNA and the circumscribed

authority delegated to the Attorney General); LeTourneau, 534 F. Supp. 2d at 724-

25 (stating that Congress "clearly set forth the purpose of SORNA" and provided

the Attorney General the power to promulgate regulations in only "the most limited

of circumstances"); Lovejoy, 516 F. Supp. 2d at 1034-35 (same).  The court finds

that, in delegating authority to the Attorney General, Congress was appropriately

placing the Attorney General in an advisory role.  The Attorney General was called

upon to utilize its unique combination of resources to suggest to the courts how

SORNA should be applied to offenders who are not expressly covered by its

---

The court need not resolve the debate over the scope of the delegation.  We
concur with Judge Cassell's cogent observations in United States v. Gill, 520 F.
Supp. 2d 1341 (D. Utah 2007):  "[I]f Congress can delegate to another branch of
government the authority to create a body of federal sentencing guidelines
governing sentencing for all federal crimes, it can surely delegate the more modest
issue of establishing an effective date for a sex offender registration statute."  Id. at
1349.  The court finds that even the broadest interpretation of SORNA's delegation
of authority to the Attorney General would not violate the nondelegation doctrine.
Accordingly, the court declines to follow the reasoning set forth in dicta by the
Aldrich court.

provisions.  May, 2007 WL 2790388, at *5-6; see also Akers, 2008 WL 914493, at *4.

The Attorney General is well suited for completing this type of task, having

previously been charged with enforcing SORNA's predecessor statute – the Jacob

Wetterling Crimes Against Children and Sexually Violent Offender Registration

Act, 42 U.S.C. § 14071 (2000).  See David, 2008 WL 2045827, at *6-7; Gould, 526 F.

Supp. at 545-46; see also Samuels, 543 F. Supp. 2d 669, 677-78 ("Congress's

delegation of authority to the Department of Justice is not unlike the myriad of

situations where Congress has enacted legislation and a federal agency implements

rules and regulations implementing the statute.").  Given the Attorney General's

prior experience with statutes akin to SORNA, the clear Congressional intent to

encompass as many sex offenders as possible within SORNA's grasp, and the

specific requirements of 42 U.S.C. § 16913(d), the court finds that Congress provided

the Attorney General with an "intelligible principle" to use in drafting the required

regulations.  See Hacker, 2008 WL 312689, at *7 (stating that Congress "included in

SORNA an intelligible principle of protecting the public from sexual predators and

guided the executive branch in setting forth requirements of registration"); see also

Gould, 526 F. Supp. at 545-46 ("Given the DOJ's prior experience with statutes of

this kind, this direction is sufficiently intelligible and does not violate the

nondelegation doctrine."); David, 2008 WL 2045827, at *6-7 (same).  Accordingly, the

court will deny defendants' motions to the extent they are premised on a purported

violation of the nondelegation doctrine.

      **G.**     **Administrative Procedure Act**

Defendants argue that the SORNA regulations promulgated by the Attorney General violate the Administrative Procedure Act ("APA") because they were enacted without notice or comment. (See No. 07-500, Doc. 23 at 25-30; No. 08-196, Doc. 21 at 33-36.) The APA outlines the procedures that an administrative agency must follow when adopting regulations. See 5 U.S.C. § 533. Generally, the agency must provide the public with notice and an opportunity to comment for a period of thirty days before the effective date of the proposed regulations. Id.; see also Utesch, 2008 WL 656066, at *10-11. However, the notice or comment period is not required when "the agency for *good cause* finds that notice and public procedure are impracticable, unnecessary, or contrary to the public interest." Am. Iron and Steel Inst. v. E.P.A., 568 F.2d 284, 291-92 (3d Cir. 1977) (quoting 5 U.S.C. § 553(b)) (emphasis added); see also Waybright, 2008 WL 2380946, at *15. "The APA's exception for good cause is to be narrowly construed" but can be satisfied where an agency has "proffered rationales justifying the elimination of public procedures." Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency, 683 F.2d 752, 764 (3d Cir. 1982).

In promulgating the SORNA regulations at issue, the Attorney General expressly signaled an intent to invoke the good cause exception. The Attorney General provided, in pertinent part, as follows:

> The implementation of this rule as an interim rule, with provisions for post-promulgation public comments, is based on the "good cause" exceptions found at 5 U.S.C. 553(b)(3)(B) and (d)(3), for circumstances in which "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."
>
> Delay in the implementation of this rule would impede the effective registration of . . . sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing a comprehensive national system for the registration of those offenders" . . . because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.
>
> It would accordingly be contrary to the public interest to adopt this rule with a prior notice and comment period normally required under 5 U.S.C. 553(b) . . . .

Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896-97 (Feb. 28, 2007) (internal citations omitted). District courts have uniformly held that the Attorney General's decision to promulgate the SORNA regulations without public notice or a comment period did not violate the APA because it was in the public interest. See, e.g., Cochran, 2008 WL 2185427, at *2; David, 2008 WL 2045827, at *7-8; Utesch, 2008 WL 656066, at *10-11; Dixon, 2007 WL 4553720, at *6; Gould, 526 F. Supp. at 546; Pitts, 2007 WL 3353423, at *8. The court notes that the Attorney General has gone to great lengths to proffer an appropriate rationale for its decision to set aside the notice and comment requirements. See 72

42

Fed. Reg. at 8896-97; see also Nat'l Res., 683 F.2d at 764.  Indeed, it would be

difficult to conjure up more compelling reasons than protecting the public from sex

offenders and preventing "additional sexual assaults and child sexual abuse or

exploitation offenses" to invoke the good cause exception.  Applicability of the Sex

Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896-97 (Feb. 28,

2007).  The court finds that the Attorney General's explicit rationale demonstrates

good cause for enacting the regulations without notice or comment, namely, to

prevent a delay in implementation that could jeopardize the safety of the public and

thwart the purposes of the Act.[14]  See Cochran, 2008 WL 2185427, at *2.

Accordingly, the court will deny defendants' motions to the extent they assert APA

challenges.

### H.   As-Applied Challenge

Defendants contend that SORNA is unconstitutional as applied to them

because the Attorney General has not addressed SORNA's retroactive applicability

to sex offenders in states that have not yet implemented SORNA.  (See No. 07-500,

Doc. 23 at 39-41; No. 08-196, Doc. 21 at 14-16.)  Contrary to defendants' position, the

---

[14]  Two district courts have held that defendants with pre-SORNA
convictions may lack standing to pursue claims under the APA.  These courts have
based their conclusions on the premise that the Attorney General's regulations
merely reinforce SORNA's retroactivity rather than creating it.  See Waybright,
2008 WL 2380946, at *15; Cardenas, 2007 WL 4245913, at *13.  But see United States
v. Kapp, 487 F. Supp. 2d 536, 543 (M.D. Pa. May 16, 2007) (finding that SORNA did
not apply to offenders with pre-SORNA convictions until the Attorney General had
promulgated its regulations).  Having found defendants' APA challenge flawed on
the merits, the court will not address the standing issue.

Attorney General's proposed guidelines specifically state that SORNA's applicability is "not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program." The National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210, 30,212 (May 30, 2007). To further clarify, the Attorney General's interim regulations make SORNA's requirements expressly applicable "to *all* sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3 (emphasis added). Because the Attorney General has expressly determined that SORNA applies to *all* sex offenders, defendants' argument is without merit. <u>See</u> <u>Utesch</u>, 2008 WL 656066, at *5. The court will deny defendants' motions to the extent they are premised on a failure by the Attorney General to make SORNA retroactively applicable to them.

## III.   <u>Conclusion</u>

For the foregoing reasons, the court will deny defendants' motions to dismiss the indictment (No. 07-500, Doc. 22; No. 08-196, Doc. 20). An appropriate order will issue.

            S/ Christopher C. Conner
            CHRISTOPHER C. CONNER
            United States District Judge

Dated:      August 20, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:07-CR-0500** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **PAUL SHENANDOAH** | : | |

--------------------------------------------------------------------------------

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:08-CR-0196** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **BRIAN DENNIS DOUGLAS** | : | |

## ORDER

AND NOW, this 20th day of August, 2008, upon consideration of defendants'
motions to dismiss indictment (No. 07-0500, Doc. 22; No. 08-196, Doc. 20), and for
the reasons set forth in the accompanying memorandum, it is hereby ORDERED
that the motions to dismiss (No. 07-500, Doc. 22; No. 08-196, Doc. 20) are DENIED.


            S/ Christopher C. Conner
           CHRISTOPHER C. CONNER
           United States District Judge